UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| CRAIG D. PRICE, | |
|---|---|
| Plaintiff, | Civ. No. 2:17-01882 |
| v. | OPINION |
| UBS FINANCIAL SERVICES, INC., | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Craig D. Price brings this action against UBS Financial Services, Inc. ("Defendant"), alleging claims of whistleblowing retaliation under the Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u–6, and the Florida Whistleblower Act, Fla. Stat. § 448.102. This matter comes before the Court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **DENIED** in part, and **STAYED** in part.

### I. BACKGROUND

Plaintiff is a financial services professional with nearly 24 years of experience, 16 of which were spent under Defendant's employ. *See* Compl. ¶¶ 1, 4, ECF No. 1. At the time of his termination, Plaintiff held the title of Senior Vice President of Investments and Private Wealth Advisor in Defendant's Stuart, Florida office. *See id.* at ¶ 5. Defendant is a Delaware corporation, with its principal place of business in Weehawken, New Jersey, that provides, among other things, financial advisory services to high net worth individuals. *See id.* at ¶ 7.

Plaintiff alleges that Defendant wrongfully terminated his employment in February 2016, in retaliation for his disclosure of a co-worker's illegal activity to Plaintiff's supervisors and then to the Financial Industry Regulatory Authority, Inc. ("FINRA"). *See id.* at ¶¶ 105–10. Plaintiff's Complaint asserts two causes of action:

(1) <u>Count 1</u>: retaliation in violation of the Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), 15 U.S.C. § 78u–6, *id.* at ¶¶ 104–16;
(2) <u>Count 2</u>: retaliation in violation of the Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.102, *id.* at ¶¶ 117–24.

Plaintiff specifically alleges that he first internally disclosed the co-worker's fraudulent mismanagement of a client account to his branch manager and Defendant's "Complex manager" in April 2013. *See id.* at ¶¶ 38–53. In July 2014, as part of its investigation into the matter, FINRA deposed Plaintiff, at which time Plaintiff disclosed the same information from his previous meetings with Defendant's managers. *See id.* at ¶¶ 62–67. Plaintiff submits that he maintained a light work schedule during the fourth quarter of 2014, but that Defendant's retaliation began in earnest upon his return to full-time work in 2015. *See id.* at ¶¶ 72–73.

Plaintiff alleges a pattern of harassment, which included the questioning of expenses and marketing events unlike anything he previously experienced. *See id.* at ¶¶ 73–77, 81–85, 91–99. In August 2015, FINRA served Defendant with a complaint related to Plaintiff's trading in a penny stock named Cardero Resource Corp. ("Cardero") on behalf of his client. *See id.* at 78–80. Plaintiff contends that Defendant received three previous complaints from that client, all of which were investigated and denied. *See id.* at ¶ 79. In November 2015, Defendant questioned Plaintiff in person for six hours about his history in recommending the Cardero stock. *See id.* at ¶¶ 87. Plaintiff previously submitted 13 Solicitation Approval Forms in connection with his Cardero trades and in compliance of Defendant's policies, all of which were approved. *See id.* at ¶ 90. On February 29, 2016, Defendant fired Plaintiff for various policy violations in relation to his trading in the Cardero stock. *See id.* at ¶¶ 100–02.

Defendant now moves to dismiss both counts of the Complaint. Defendant first argues that Plaintiff does not meet the definition of "whistleblower" under the Dodd-Frank Act because he never provided information to "the Commission"—*i.e.*, the Securities and Exchange Commission ("SEC")—as required by statute. *See* Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Mem.") 8–17, ECF No. 11-2. Defendant further argues that both the Dodd-Frank and FWA claims must be dismissed because Plaintiff does not plead a sufficient causal link between his disclosures and his termination. *See id.* at 17–24.

Plaintiff counters by arguing that he meets the definition of whistleblower as adopted by the SEC in its rulemaking authority over the Dodd-Frank Act. *See* Pl.'s Resp. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n") 12–21, ECF No. 17. Plaintiff further argues that he reported information to the SEC by reporting to FINRA, which resides under the SEC's jurisdiction. *See id.* at 21–23. Finally, he argues that he pleaded sufficient facts to demonstrate a causal link between his disclosures and his termination because he alleged a pattern of harassing behavior that began soon after his FINRA deposition and continued until his termination. *See id.* at 23–34. Defendant filed a reply, which largely reiterated its original arguments. *See* Reply in Supp. of Def.'s Mot., ECF No. 18.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under

Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

### III. DISCUSSION

Defendant presents a threshold question concerning who may pursue a private cause of action under the Dodd-Frank Act. The answer to this question, however, does not affect Plaintiff's FWA claim, which Florida courts construe broadly. *See Pinder v. Bahamasair Holdings Ltd., Inc.,* 661 F. Supp. 2d 1348, 1351 (S.D. Fla. 2009) (The FWA "is to be construed liberally in favor of granting access to the remedy." (internal quotation and citations omitted)). The Court, therefore, will first address the causal link alleged by Plaintiff before turning to the Dodd-Frank Act.

#### A. Plaintiff Sufficiently Pleads a Causal Link Between His Disclosures and His Termination

"[A] valid claim for retaliation under Dodd-Frank and the FWA must allege that (1) plaintiff engaged in a protected activity, (2) plaintiff suffered a materially adverse employment action, and (3) the adverse action was causally connected to the protected activity." *Hall v. Teva Pharm. USA, Inc.*, 214 F. Supp. 3d 1281, 1289 (S.D. Fla. 2016) (citing Securities Whistleblower Incentives & Protections, 76 Fed. Reg. 34300, 34304 (June 13, 2011)). "'[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate . . . reason for the [adverse action].'" *See id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)). "'[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation.'" *Id.* (quoting same).

Defendant does not challenge that Plaintiff engaged in a protected activity or that he suffered a materially adverse employment action. Defendant only argues that Plaintiff has not pleaded a causal link between the protected activity and the adverse action. The main thrust of Defendant's argument is that multiple years passed between Plaintiff's

disclosures and his termination. *See* Def.'s Mem. at 18–21. Defendant also argues that Plaintiff cannot plausibly establish, under any circumstance, that his termination was the result of unlawful retaliation because Defendant demonstrated a legitimate reason for his termination—*i.e.*, the violations of Defendant's policies in relation to the trading of Cardero stock. *See id.* at 22–24.

The Court disagrees with both arguments. First, close temporal proximity between the protected activity and the adverse action is merely one way in which a plaintiff may establish an inference of retaliatory motive; it is not the *only* way. "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citation omitted); *see also Teva Pharm.*, 214 F. Supp. 3d at 1293–94 ("The court must, in considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered [non-retaliatory] reasons . . . ." (internal quotation and citation omitted)). Plaintiff pleads precisely this: a pattern of antagonism. *See* Pl.'s Opp'n at 30 (summarizing pattern pleaded).

Second, Plaintiff pleads sufficient facts that, if true, would establish a pretext for Defendant's adverse action, which might lead a fact-finder to an inference of retaliation. Plaintiff alleges that Defendant's behavior changed markedly after he testified before FINRA, particularly as related to his expenses and marketing events. *See* Compl. at ¶¶ 73–77, 81–85, 91–99. Plaintiff also pleads that Defendant did not once question him about three prior complaints related to his trading in the Cardero stock. It was only after he testified that Defendant decided he violated some corporate policies that led to his termination. If true, Plaintiff's pleadings could establish a pretext for his termination. Taking Plaintiff's pleadings as true, which the Court must at the motion to dismiss stage, Plaintiff has sufficiently pleaded a causal link between his disclosures and his termination. Accordingly, the motion to dismiss with respect to Count 2 is **DENIED**.

> **B.    The Supreme Court Will Shortly Decide Whether a Person Who Did Not Directly Report Information to the SEC Still Qualifies as a "Whistleblower" Under Dodd-Frank**

Defendant argues that Plaintiff does not have a cause of action under Dodd-Frank because he does not meet the statutory definition of "whistleblower." The Dodd-Frank Act defines whistleblower as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or regulation, by the Commission." *See* 15 U.S.C. § 78u–6(a)(6) (emphasis added). Defendant argues that the phrase "to the Commission" necessarily excludes Plaintiff from Dodd-Frank's private cause of action because he did not report any information directly to the SEC.

Defendant's argument is not novel. In fact, a circuit split currently exists as to precisely this point. The Fifth Circuit ruled that a plaintiff must report directly to the SEC to be eligible under Dodd-Frank. *See Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620 (5th Cir. 2013). The Second and Ninth Circuits ruled that a plaintiff making disclosures

otherwise protected by the Sarbanes-Oxley Act and other similar disclosures also qualifies as a whistleblower under the Dodd-Frank Act. *See Somers v. Digital Realty Trust Inc.*, 850 F.3d 1045 (9th Cir. 2017), *cert. granted* 137 S. Ct. 2300 (2017); *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145 (2d Cir. 2015). The Supreme Court granted a writ of certiorari in June 2017 of the Ninth Circuit case and oral argument is scheduled for November 28, 2017.

The Supreme Court's decision will definitively answer the question put to this Court by Defendant. "A United States district court has broad power to stay proceedings." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N.A., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id*. The Court exercises its discretion here and stays Defendant's motion with respect to Count 1, pending the Supreme Court's decision in *Digital Realty Trust Inc. v. Somers*. The Court finds, however, that Plaintiff's FWA claim is unaffected by the outcome in *Somers* because the FWA does not contain the language at issue in that case and is otherwise construed broadly. The Court, therefore, determines that discovery shall begin on Plaintiff's FWA claim at the issuance of this opinion and subsequent order.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **DENIED** in part, and **STAYED** in part. The motion to dismiss is denied with respect to Count 2. The Court stays Defendant's motion with respect to Count 1, pending the Supreme Court's decision in *Digital Realty Trust, Inc. v. Somers*. An appropriate order follows.

                                              */s/ William J. Martini*
                                       **WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 27th, 2016**